OPINION
{¶ 1} This appeal arises from the Lake County Court of Common Pleas wherein, appellant, Marion W. Stewart, was charged with two counts of felonious assault, both with firearm specifications. Appellant waived his right to arraignment and entered "not guilty" pleas on both charges, and the matter was set for trial.
 {¶ 2} Prior to trial, appellant filed a motion in limine seeking to prohibit the state from introducing any evidence of domestic violence incidents which arose between appellant and his girlfriend (one of the victims in the case), Debbie Silvis. The trial court denied the motion and the matter proceeded to trial.
 {¶ 3} After a jury trial, appellant was found "guilty" as to the first count of felonious assault with a firearm specification, involving Debbie Silvis and was found "not guilty" as to the second count, involving Reginald Square. Appellant was sentenced to two years on the felonious assault charge and a mandatory three years imprisonment for the accompanying firearm specification, resulting in five years imprisonment.
 {¶ 4} The following facts are relevant to this appeal. Appellant and Debbie Silvis had been involved in a romantic relationship "on and off" for a period of approximately two years. Silvis periodically spent time at appellant's home in Painesville Township.
 {¶ 5} On March 25, 2000, Silvis was visiting appellant. Both had been drinking that day. Appellant left the home for a short time, at which time Silvis received a telephone call from Tina Blivens, another friend of appellant. Blivens wished to speak to appellant, who was not home. Blivens asked to come to appellant's house. Silvis informed Blivens she would have to speak to appellant directly. As the phone call was ending, appellant returned home and Silvis handed the phone to him. Appellant told Blivens she could come to visit. Silvis became upset at hearing this and expressed this to appellant.
 {¶ 6} Blivens arrived and the three went to appellant's basement where they started drinking. At some point, Silvis witnessed appellant and Blivens kissing and became upset. She and Blivens exchanged words. Blivens subsequently received a telephone call from her sister. Silvis went to another telephone in the home and surreptitiously listened in on Blivens' conversation with her sister. While listening, Silvis learned that Blivens had a warrant out for her arrest. Silvis subsequently called the police and informed them of Blivens' whereabouts. Lake County Sheriff Deputies arrived shortly after, arrested Blivens, and took her into custody.
 {¶ 7} After Blivens' arrest, appellant and Silvis got into an argument about Silvis telephoning the police. It was during this argument that appellant punched Silvis in the face with a closed fist after she told him she was leaving. The blow knocked Silvis to the floor, and, once she got to her feet, appellant punched her in the face again with his fist. Shortly thereafter, Silvis telephoned her mother for a ride. Her mother informed her that her brother-in-law, Reginald Square, would arrive shortly to pick her up. Silvis' mother called a short while later to inform Silvis that Square would be there shortly. After this call, appellant pulled the phone wires from the wall and threw Silvis' dresser, with her clothing inside, out the door. Silvis testified that, as appellant was doing this, Square arrived. He parked facing the house. Silvis left the house and proceeded towards Square's car. The photo exhibits show that as one would look out from the front door of the house, the car was well to the left of the front door. Thus, the passenger-side was away from the front door and the driver-side was directly exposed to the front door of the house. As Silvis was leaving the house, she and appellant continued to argue. As Silvis was reaching for the passenger door handle to put her clothes into the car, she heard the sound of two gunshots coming from appellant's direction. She turned and saw appellant standing at the door with a rifle in his hand. Upon seeing appellant, Silvis told Square to duck. As Silvis crouched near the far side of the car, she heard three more shots being fired. She heard three shots hit the car.
 {¶ 8} After firing the shots, appellant went back in the house. As Silvis was going to a neighbor's to telephone the police, Lake County Sheriff Deputies arrived. Sergeant Dondorfer was one of the first responding officers. He noted Silvis and Square standing at the end of appellant's driveway near Square's car. Sergeant Dondorfer knocked on the door and appellant appeared. When questioned, appellant stated that he was responsible for firing the gun. Appellant led the officer to where he had placed the gun. Appellant was subsequently arrested and advised of his Miranda rights. Appellant was again advised of his Miranda rights when he arrived at the station and at that time he expressed he would like to make a statement. In his sworn and signed statement, appellant noted that he and Silvis got into an argument over Blivens. He also noted that he did punch Silvis during their argument, he retrieved his loaded rifle, fired two shots in the air, and then fired shots towards the back fender of the car. He also noted, "I usually can hit what I'm shooting at and I was aiming at the rear fender of the car."
 {¶ 9} Appellant files this timely appeal, citing five assignments of error. Appellant's first assignment of error is:
 {¶ 10} "The trial court committed reversible error to the prejudice of the defendant-appellant when it refused to submit the defendant-appellant's proposed jury instructions."
 {¶ 11} Appellant's first assignment of error is comprised of three issues. First, appellant contends that the trial court erred in refusing to submit appellant's proposed jury instructions. Second, he claims the trial court erred when it failed to provide the jury with an accurate definition of "knowingly." Lastly, appellant asserts that the trial court erred when it misstated portions of the jury instructions.
 {¶ 12} A trial court must give only those jury instructions which are relevant and necessary for the jury to weigh all of the evidence.[1]
Moreover, a defendant is entitled to have his proposed jury instructions given only when they are correct statements of law, pertinent to the proof in the record or to material issues, are timely presented and not already included in the substance in the charge to the jury.[2]
 {¶ 13} As the reviewing court, we must determine whether the trial court abused its discretion in its instructions to the jury.[3]
 {¶ 14} In the present case, appellant was charged with violating R.C. 2903.11(A)(2) which reads, "[n]o person shall knowingly *** [c]ause or attempt to cause physical harm to another *** by means of a deadly weapon or dangerous ordnance." A plain reading of this statute indicates that the culpable mental state of "knowingly" attaches to the elements of "causing or attempting to cause physical harm by means of a deadly weapon or dangerous ordnance." Thus, in order for the jury to find appellant guilty, it had to find (1) he caused or attempted to cause physical harm to the victim, (2) with a deadly weapon or dangerous ordnance, and (3) he acted knowingly, i.e., he was aware that his conduct would probably cause a certain result.[4]
 {¶ 15} Appellant proposed the following instruction: "If you find that Mr. Stewart's actions were reckless then the state has not met the burden of proof necessary for a charge of felonious assault." Appellant argues that this instruction was necessary and relevant to the jury and was not included in the general charge.
 {¶ 16} We are not persuaded by appellant's argument. A review of the record reveals that the court instructed the jury that appellant had to "knowingly cause or attempt to cause physical harm to the victims by means of a deadly weapon or dangerous ordnance." The court defined "knowingly" using one of three alternatives provided in the Ohio Jury Instruction, stating, "a person is aware that his conduct will probably be of a certain nature." Thus, the trial court did instruct the jury regarding the requisite degree of culpability required for the offense charged. The trial court has discretion to determine proper jury instructions. A trial court may properly refuse to give limited instructions when the propositions of the requested instruction are fully and fairly covered by the court in its general charge.[5] Appellant was not prejudiced by the court's refusal to instruct the jury using appellant's proposed instructions.
 {¶ 17} We are also not persuaded by appellant's argument that the trial court erred in its decision to instruct the jury on the definition of "knowingly." The trial court has discretion to determine the language of its own jury instructions.[6] The Ohio Jury Instructions provide three possible definitions for the statutory term "knowingly."[7] The first two definitions are at issue in this case.
 {¶ 18} The first definition states that, "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result." The second definition reads, "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably be of a certain nature." Appellant preferred the first definition, while the state preferred that both be read to the jury. The court ultimately chose to instruct on the second. We find that, although appellant preferred the first definition, the trial court did not err when it chose the second. Thus, the trial court did not abuse its discretion in instructing the jury on the definition of "knowingly."
 {¶ 19} Appellant also argues that the trial court erred when it misstated portions of the jury instructions when charging the jury. Essentially, appellant argues that because the trial court misstated portions of the jury instructions, it failed to give complete and accurate instructions. When making its charge to the jury, the trial court stated, "[t]he State charges that the act or failure to act of the Defendant caused physical harm." The court noted that this was in error as there was no physical harm to the victims and, after a short bench conference, the court noted that it would re-read that portion of the instructions. The court then improperly instructed the jury regarding physical harm two more times. On the fourth attempt the court instructed the jury stating:
 {¶ 20} "The State charges that the Defendant caused or attempted to cause physical harm to Debbie Silvis and Reginald Square. The Defendant's responsibility is not limited to the immediate or most obvious result of the Defendant's act or failure to act. The Defendant is also responsible for the natural and foreseeable results that follow, in the ordinary course of events, from the act or a failure to act."
 {¶ 21} At the conclusion of the charge, the appellant objected to the repeated misstatements and the "natural consequences" instruction stating that it was inaccurate since there was no actual physical harm.
 {¶ 22} In the end, the court agreed to have the portion of the instructions referring to the "natural and foreseeable results" omitted from the written instructions given to the jury. Appellant contends that the instructions were still too confusing and inaccurate for the jury to the prejudice of the appellant.
 {¶ 23} When the trial court realized that the instructions read to the jury were inaccurate, it immediately notified the jury and restated the instructions. Although it took four attempts before the correct instructions were given, the jury ultimately received the correct oral charge, and the court omitted the inaccurate portions from the written instructions given to the jury. Thus, appellant's contention that the jury instructions were not complete and accurate is not well taken.
 {¶ 24} Appellant's first assignment of error is without merit.
 {¶ 25} Appellant's second assignment of error is:
 {¶ 26} "The defendant-appellant was denied a fair and impartial trial and his right to due process of law as a result of the improper conduct of the prosecuting attorney."
 {¶ 27} In his second assignment of error, appellant argues statements made by the prosecution during closing arguments prevented him from receiving a fair and impartial trial.
 {¶ 28} In determining whether prosecutorial misconduct occurred during closing arguments, we must determine whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused.[8] Generally, the prosecution is given a certain latitude in making closing arguments.[9]
 {¶ 29} Appellant specifically takes issue with the following statements made by the prosecution during closing arguments:
 {¶ 30} "Now, I would like to address with you that first requirement. First of all knowingly, what you are going to hear the Court say is that knowingly is, regardless of his purpose, regardless of what he intended to do at the time, whether or not he knew what his knowledge was at the time he engaged in these acts of firing the gun in the direction of other people, whether or not he knew that conduct would probably cause or be of a certain nature. Certainly in that regard, I think all of us through our common sense, common experience, would conclude that the act of pointing a gun and firing in the direction of two people, that you know that your actions probably could cause physical harm to someone else."
 {¶ 31} Appellant immediately objected to "probably could cause" stating it was a lower standard than "knowingly cause." Upon appellant's objection, the trial court instructed the prosecution to correct its statement at which time the prosecution defined "knowingly" consistent with a definition provided in the Ohio Jury Instructions. Appellant argues this was still not sufficient because the jury was never told that "probably could cause" was incorrect. We find appellant's contention here to be misguided. Once "knowingly" was adequately defined for the jury, this was an appropriate curative remedy, and the state was not required to tell the jury that "probably could cause" was incorrect.
 {¶ 32} Appellant also cites the fact that the prosecution used a demonstrative board with both definitions of "knowingly" as evidence of further prosecutorial misconduct. As the jury instructions ultimately included only one of the definitions of "knowingly" which was adequately defined for the jury, the appearance of alternate definitions on a demonstrative board during closing arguments constitutes harmless error that did not prejudice appellant.
 {¶ 33} Appellant's second assignment of error is without merit.
 {¶ 34} Appellant's third assignment of error is:
 {¶ 35} "The trial court erred to the prejudice of the defendant-appellant when it denied the defendant-appellant's motion in limine to exclude evidence of prior acts of the defendant-appellant in violation of his constitutionally mandated right to due process of law."
 {¶ 36} Appellant contends that the trial court erred in denying his motion in limine seeking to prohibit any reference to the argument between appellant and Silvis that took place approximately thirty to forty-five minutes prior to the shooting. Appellant argues that the incident is not relevant as it was a separate, distinct event that took place thirty to forty-five minutes earlier and, even if relevant, is highly prejudicial and should have been deemed inadmissible under Evid.R. 403(A).
 {¶ 37} Appellant's contention that the argument between appellant and Silvis is totally separate and distinct from the shooting is untenable. Clearly, trial testimony reveals that it was this incident of domestic violence which acted as a catalyst, allowing the argument to escalate into the circumstances surrounding the shooting. The fact that appellant had already demonstrated violence toward Silvis has a high probative value, not outweighed by its prejudicial character.
 {¶ 38} Appellant's third assignment of error is without merit.
 {¶ 39} Appellant's fourth assignment of error is:
 {¶ 40} "The trial court erred to the prejudice of the defendant-appellant when it denied his motion for a judgment of acquittal pursuant to Crim.R. 29."
 {¶ 41} In State v. Bridgeman the Supreme Court of Ohio noted that a court should not grant an acquittal, "if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt."[10]
 {¶ 42} A Crim.R. 29 motion for acquittal challenges the sufficiency of the evidence introduced by the state.[11] When evaluating the sufficiency of the evidence, the reviewing court must determine whether after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."[12]
 {¶ 43} Appellant asserts that because the term "knowingly" was not properly defined for the jury and appellant's conduct only rose to the level of recklessness, the evidence presented by the state could not support the conviction.
 {¶ 44} When the evidence proffered by the state is viewed in the light most favorable to the prosecution, it clearly supports the conviction. Trial testimony from both Square and Silvis, as well as another eyewitness indicated that appellant had his rifle pointed directly at Square and Silvis for some time. Appellant himself, in his written, sworn statement, acknowledged that he was "out of control" during the entire incident and that he may have told them he wanted to kill them.
 {¶ 45} Appellant fails to demonstrate that the state failed to provide sufficient evidence to support his conviction.
 {¶ 46} Appellant's fourth assignment of error is without merit.
 {¶ 47} Appellant's fifth assignment of error is:
 {¶ 48} "The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."
 {¶ 49} In determining whether a verdict is against the manifest weight of the evidence: "[t]he court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."[13]
 {¶ 50} Appellant again asserts that the state failed to prove that appellant "knowingly" intended to cause harm to Silvis. Appellant specifically addresses the fact that he was experienced with guns and was aiming directly for the fender of the car and not Silvis or Square. Also, appellant asserts that trial testimony revealed that after he shot at the car, he put the gun down and walked away, further demonstrating that he did not intend to kill or harm Silvis or Square.
 {¶ 51} The record reveals overwhelming evidence in support of the jury verdict. In appellant's own statement, he admits that he may have threatened to kill Silvis and Square while eyewitness testimony from a neighbor places appellant approximately fifteen feet away from Silvis and Square with the gun pointed directly at them. This evidence, coupled with the evidence of appellant's earlier violence against Silvis clearly supports the verdict. Appellant fails to demonstrate that the jury lost its way and created a manifest miscarriage of justice.
 {¶ 52} Appellant's fifth assignment of error is without merit.
 {¶ 53} Therefore, the judgment of the trial court is affirmed.
DONALD R. FORD, J., concurs.
[1] State v. Comen (1990), 50 Ohio St.3d 206, paragraph two of the syllabus.
[2] State v. Guster (1981), 66 Ohio St.2d 266, 269.
[3] Id. at 271.
[4] 4 Ohio Jury Instructions (2002), Section 409.11, at 61.
[5] Rice v. Cleveland (1944), 144 Ohio St. 299, 304.
[6] Parma Heights v. Jaros (1990), 69 Ohio App.3d 623, 630.
[7] 4 Ohio Jury Instructions (2002), section 409.11(1), at 61.
[8] State v. Smith (1984), 14 Ohio St.3d 13, 14.
[9] (Citations omitted.) State v. Bleasdale (1996), 11th Dist. No. 95-A-0047, 1996 Ohio App. LEXIS 3876, at *7.
[10] State v. Bridgeman (1978), 55 Ohio St.2d 261, paragraph one of the syllabus.
[11] State v. Jenks (1991), 61 Ohio St.3d 259.
[12] Id. at paragraph two of the syllabus.
[13] (Citations omitted.) State v. Thompkins (1997), 78 Ohio St.3d 380,387.